Christopher R. Houk, State Bar No. 20843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com
*Attorneys for Joe Whyte*

Please send all documents to:
jmontanez@houklawfirm.com

# IN THE UNITED STATES DISTRICT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Whyte,<br><br>                              Plaintiff,<br><br>vs.<br><br>Terros, Inc., a domestic limited liability company,<br><br>                              Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

After Plaintiff Joe Whyte faced a bomb threat, a gun pointed at him at work, and a patient having a seizure in a two-day period at work, he developed mental disabilities. Defendant Terros, Inc. terminated Plaintiff Joe Whyte's employment after denying him a reasonable accommodation for his disabilities, in violation of the Americans with Disabilities Act.

## Plaintiff's Claims

1.      42 U.S.C. §§ 12112(a) and (b)(5)(A) – Americans with Disabilities Act (ADA), Failure to Provide Reasonable Accommodation.

2.      42 U.S.C. §§ 12112(a) and (b)(5)(B) -- Americans with Disabilities Act, Discriminatory Discharge.

**The Parties and Jurisdiction**

3. The Plaintiff, Joe Whyte has been, or was, at all times material to this Complaint:

    A. an adult resident of Maricopa County; and

    B. employed by Defendant Terros, Inc.

4. Defendant Terros, Inc. is, and has been at all times material to this Complaint:

    A. the employer of Joe;

    B. an employer of more than fifteen persons; and

    C. located within Arizona, including Maricopa County, Arizona;

5. Joe seeks relief which arises from federal statutes. This Court therefore has original jurisdiction pursuant to 28 U.S.C. § 1343(a)(4).

6. All events alleged occurred in Maricopa County, Arizona, and Maricopa County was the domicile of all parties at relevant times.

7. Based upon the foregoing, the United States District Court for the District of Arizona, Phoenix Division, is the appropriate venue for this action pursuant to 28 U.S.C. §1391(b).

8. Joe has satisfied all conditions precedent to filing suit.

9. On March 17, 2021 the Equal Employment Opportunity Commission issued a determination that Terros violated the ADA:

> [T]here is reasonable cause to believe [Terros] violated the ADA when it required [Joe to apply for vacant positions; failed to reassign him to a vacant position, for which he was qualified, as a reasonable accommodation for his disability, and terminated his employment in violation of the ADA.

**Fact Allegations in Support of All Counts**

**Background**

10. Joe started working for Terros in January 2012 as a substance abuse specialist.

11. He did not receive any discipline at Terros.

12. Joe received a bonus every year he was employed with Terros.

Page 2 of 11

13. Joe's 2016 evaluation included comments such as "very knowledgeable," "stays motivated," and "offers valuable feedback."

14. Before Joe started at Terros, he had the following work experience prior to working at Terros, which qualified him to work at Terros:

    a. Program Director at Choice in Community Housing, which included supervision of staff; and

    b. Counseling roles at the Youth Development Institute, Mercy Hospital, and Henry Ford Health Center.

    c. He worked for a non-profit organization for several years, providing services to patients dealing with substance abuse addiction.

**A Bomb Threat and Gun Incident Triggered Joe's PTSD**

15. On November 15, 2017, a patient made a threat on the phone to Joe to set off a bomb. The building was evacuated for 2.5 hours.

16. The next day, on November 16, 2017, another patient came in and pointed a gun at Joe and other employees, pulled out a fake FBI badge trying to pass as an FBI agent, and demanded to see a doctor. Joe kept the patient occupied, engaging in small talk, telling him that Joe was glad he was here and asking if he needed any housing services. After about 30 minutes, the police arrived.

17. At the same time, Joe saw another patient having a seizure outside.

18. During a debriefing after the gun incident, Joe began to have an emotional breakdown. He suffered multiple panic attacks.

19. After Terros excused him from work the rest of the day, Joe broke down crying in his car and continued for two hours.

20. The next day, Joe went to the doctor who told him to take time off work, which Terros agreed to.

21. At this time, Joe suffered from PTSD, major depression, and mood disorder.

22. In January 2018, he started seeing a psychiatrist, Dr. Mark Lonquist, for mental health therapy to deal with the trauma resulting from the incidents at work.

23. In January 2018, Dr. Lonquist determined that Joe was able to continue working, but ordered that Joe be given accommodations including (1) no home visits, (2) no transporting patients, and (3) no on-call crisis intervention.

24. Joe was to be reevaluated in three months.

25. Dr. Lonquist did not restrict him from face-to-face interactions with patients.

26. In 2017 and 2018, Terros provided light duty to injured workers.

27. For example, when a co-worker, April Brown, broke her arm, at the direction of Samuel Oghenejabor, Clinical Coordinator, Joe took over her case load, did her home visits and transported her clients until Brown could recover.

28. Terros permitted workers to cover each other's job duties in this way.

29. Terros excused another employee from doing in-person patient assessments and allowed her to do them from home while she was dealing with cancer.

30. Despite his restrictions, Joe could still perform over 20 essential duties of his job listed by Terros for the ACT Substance Abuse Specialists. For example, Joe could document, perform patient needs assessments, develop and implement individual service plans, engage in informal support systems (families of patients) to provide clinical skills training to them, recruit new patients, or coordinate treatment with other therapists.

31. Between the time of his injury in 2017 until he was terminated, Terros had open positions that Joe was qualified for with or without accommodations.

32. Some open positions that Joe was qualified for with or without reasonable accommodations included administrative positions.

33. Whyte identified about 10 open positions he was qualified for with or without an accommodation, including the following:

    a. Rehabilitation Specialist;

    b. Manager- HIV/STI Programs;

      c.   Program Coordinator;

      d.   Peer Support Liaison/Coordinator;

      e.   Clinicia – LADDDER program; and

      f.   Learning Specialist.

34. Instead of automatically transferring him into one of these jobs, Terros made Joe apply and compete for them.

35. Joe interviewed for the Rehabilitation Specialist position and the hiring manager, Melvna Butler, offered it to him. Butler told Joe she was willing to accommodate his light duty needs by having him answer the phones and administrative things—which Joe could do—until he was cleared by the doctor. Joe agreed to the job.

36. However, HR blocked Joe from getting the job telling him he couldn't fulfil the driving duties of the position.

37. HR promised to look for some other positions that Joe was qualified for, but no one from Terros ever followed up.

38. In 2017 and 2018, Terros had a policy of automatically terminating employees within 30 days of their injuries if they were not able to do all the essential functions of the job with or without an accommodation.

39. Terros told Joe: "You will have 30 calendar days to find a position and return to work. If a position that you are qualified for is not available, then your employment with Terros, Inc. will be terminated."

40. In March 2018, Terros terminated Joe's employment because he was not 100% healed.

41. Just about a week after being fired in March 2018, Joe had a medical appointment scheduled where he'd have learned if he was ready to have all his restrictions lifted. Terros knew about this appointment before it terminated Joe's employment.

42. At the time Terros terminated Joe's employment, he planned to work at Terros for six additional years until he was 70 years old.

**Demand for Jury Trial**

43. Plaintiff Joe demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution, and Federal Rule of Procedure 38(a), (b).

**Count One:**

**Failure to Provide Reasonable Accommodation, ADA**
**42 U.S.C. §§ 12112(a) and (b)(5)(A)**
**Against Terros**

44. Joe repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

45. Joe is a qualified individual with a disability.

46. Joe was able to perform his job duties with or without a reasonable accommodation.

47. Joe's mental impairments, including PTSD, major depression, and mood disorder substantially limit one or more major life activities (e.g., working).

48. Job transfers and leave may be reasonable accommodations.

49. Terros failed to make reasonable accommodation for Joe's mental limitations.

50. Terros failed to fully engage with Joe to identify the precise limitations resulting from his disabilities and potential accommodations that could overcome those limitations.

51. The unlawful employment practices complained of in the foregoing were and are intentional.

52. The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to the federally protected rights of Joe.

53. As a direct and proximate results of the conduct by Terros, Joe is entitled to compensatory damages including for suffering, pain, including pain and suffering due to PTSD, major depression, and mood disorder, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, change in demeanor, and harmed reputation at work, and manifestations of his mental impairments (including recurring visions from the Vietnam war, night terrors, loss of appetite, driving at night, and systematic desensitization), and of consortium, including the loss of care, affection, and companionship between wife and husband. Joe also incurred medical expenses for doctor and mental health appointments, as well as prescriptions. Joe is reasonably likely to incur more compensatory damages in the future.

54. Injunctive relief should be granted for Joe against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to their duties and liabilities under 42 U.S.C. §§ 12112(a) and (b)(5)(A).

55. The unlawful employment practices complained of were intentional.

56. The unlawful employment practices complained of were done with malice or with reckless indifference to Joe's federally protected rights.

57. Joe seeks a judgment for the following:

    A. Compensatory and general damages in an amount to be determined by the trier-of-fact;

    B. Punitive damages;

    C. Monetary damages, including lost wages, salary, employment benefits, 401K vesting, stocks, and other compensation, in an amount to be proven at trial;

D. Reinstatement, or front pay in lieu of reinstatement;

E. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Joe;

F. His reasonable attorney's fees, expert fees, and litigation expenses and costs incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule Civil Procedure 54(d)(2), Local Rule Civil Procedure 54.2, and 42 U.S.C § 12205; and

G. His taxable costs incurred herein, pursuant to Federal Rule Civil Procedure 54(d)(1), Local Rule Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Count Two:**
**Disparate Treatment and Discriminatory Discharge, ADA**
**42 U.S.C. §§ 12112(a) and (b)(5)(B)**
**Against Terros**

58. Joe repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

59. Joe is a qualified individual with a disability.

60. Terros treated Joe differently than similarly situated non-disabled employees and terminated Joe's employment because of his disabilities or because he had physical or mental limitations requiring reasonable accommodation.

61. The unlawful employment practices complained of in the foregoing paragraphs were and are intentional.

62. The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to Joe's the federally protected rights.

63. As a direct and proximate results of the conduct by Terros, Joe is entitled to compensatory damages including for suffering, pain, including pain and suffering due to PTSD, major depression, and mood disorder, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, change in demeanor, harmed reputation at work, and manifestations of his mental impairments (including night terrors, loss of appetite, driving at night, and systematic desensitization), and loss of consortium, including the loss of the care, affection, and even companionship between wife and husband. Joe also incurred medical expenses for doctor and mental health appointments, as well as prescriptions. Joe is reasonably likely to incur more compensatory damages in the future.

64. Injunctive relief should be granted for Joe against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to their duties and liabilities under 42 U.S.C. §§ 12112(a) and (b)(5)(B).

65. The unlawful employment practices complained of were intentional.

66. The unlawful employment practices complained of were done with malice or with reckless indifference to Joe's federally protected rights.

67. Joe seeks a judgment for the following:

H. Compensatory and general damages in an amount to be determined by the trier-of-fact;

I. Punitive damages;

J. Monetary damages, including lost wages, salary, employment benefits, 401K vesting, stocks, and other compensation, in an amount to be proven at trial;

K. Reinstatement, or front pay in lieu of reinstatement;

L. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Joe;

M. His reasonable attorney's fees, expert fees, and litigation expenses and costs incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule Civil Procedure 54(d)(2), Local Rule Civil Procedure 54.2, and 42 U.S.C § 12205; and

N. His taxable costs incurred herein, pursuant to Federal Rule Civil Procedure 54(d)(1), Local Rule Civil Procedure 54.1, and 28 U.S.C. § 1920.

WHEREFORE, Joe prays for the following relief:

1. For a declaration that Terros violated Joe's rights under the ADA;

2. All relief available under the ADA.

3. For injunctive relief, including a permanent injunction prohibiting Terros from engaging in discrimination under the ADA;

4. Compensatory and general damages in an amount to be determined by the trier-of-fact;

5. For equitable relief such as employment, back pay, lost wages, promotion, employment benefits, 401K vesting, stocks, other compensation, reinstatement or, in lieu of reinstatement, front pay;

6. For punitive damages;

7. For compensation for past and future non-pecuniary losses (including medical expenses) resulting from the unlawful practices under the ADA;

8. For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full;

9. For reasonable attorneys' fees;

10. Expert fees, litigation expenses, and costs; and

11. All other relief the court shall deem is just.

**DATED** this 14th day of December 2021.

**HOUK LAW FIRM, PLLC**

By: /s/ Christopher R. Houk
Christopher R. Houk
*Attorneys for Joe Whyte*